ACCEPTED
14-14-01003-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
3/9/2015 12:00:00 AM
CHRISTOPHER PRINE
CLERK

## NO. 14-14-01003-CV

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
3/7/2015 9:33:53 PM
CHRISTOPHER A. PRINE
Clerk

## IN THE COURT OF APPEALS
## FOR THE FOURTEENTH JUDICIAL DISTRICT
## OF TEXAS AT HOUSTON, TEXAS

### *IN THE INTEREST OF D.T., Jr., A CHILD*

## APPEALED FROM THE 315TH
## DISTRICT COURT OF HARRIS COUNTY, TEXAS

### Trial Cause No. 2010-00284J-A

### *AMENDED ANDERS BRIEF OF APPELLANT, A.G.*

LANA SHADWICK
TBN: 00784951
2211 Norfolk, Ste. 920
Houston, Texas 77098
PHONE:713-392-8222
Lana@LanaShadwick.com

**Attorney for A.G., Appellant**

## ORAL ARGUMENT NOT REQUESTED

1

## *IDENTIFICATION OF PARTIES AND COUNSEL*

The names of all parties and counsel in this cause are:

**A.G., Appellant**
**Brian Fischer (Trial)**
TBN 07050750
6200 Gulf Freeway, Suite 202
Houston, Texas 77023-5543
(713) 520-7500
**Anna Stool (Attorney Ad Litem for Mother)**
TBN 19312000
2777 Allen Parkway, Suite 1000
Houston, Texas 77019-2165
(713) 522-9975
**Lana Shadwick (Appeal)**
TBN 00784951
2211 Norfolk, Suite 920
Houston, Texas 77098
(713) 392-8222


**Texas Department of Family and Protective Services**
**David Masquelette (Trial)**
Assistant County Attorney
TBN 13162700
**Sandra D. Hachem (Appeal)**
TBN 08620460
2525 Murworth, Suite 300
Houston, Texas 77054
(713) 578-3900

**Attorney for the Alleged Father (has not appealed)**
Mr. John Maisel
TBN 12850800
Commercial Bank Building
917 Franklin Street, Suite 100
Houston, Texas 77002-1751
(713) 652-0000

**<u>Attorney for the Unknown Father</u>**
Ms. Itze Soliz
TBN 24004930
901 Richmond Avenue, Suite 200
Houston, Texas 77006
(713) 281-451-7000

**<u>Attorney Ad Litem for the Child</u>**
Mr. JB Bobbitt
TBN 24078237
1533 West Alabama Street
Houston, Texas 77006
(713) 529-6234

*APPELLANT DOES NOT REQUEST ORAL ARGUMENT*

# *TABLE OF CONTENTS*

INDENTIFICATION OF PARTIES AND COUNSEL          2

ORAL ARGUMENT NOT REQUESTED                     1, 4

TABLE OF CONTENTS                               5

TABLE OF AUTHORITIES                            6

STATEMENT OF THE CASE                           9

ISSUE PRESENTED                                 9

**Whether there are any non-frivolous grounds to assert on appeal.**

STATEMENT OF FACTS                              9

SUMMARY OF ARGUMENT                             13

ARGUMENT AND AUTHORITIES                        14

CONCLUSION AND PRAYER                           24

CERTIFICATE OF COMPLIANCE                       25

CERTIFICATE OF SERVICE                          26

# TABLE OF AUTHORITIES

**Federal Cases**
*Santosky v. Kramer,*                                                      14
455 U.S. 745 (1982)

**State Cases**
*Anders v. California,*                                                    *passim*
386 U.S. 738 (1967)

*Bledsoe v. State,*                                                        18
178 S.W.3d 824 (Tex. Crim. App. 2005)

*Dupree v. Texas Dep't of Protective and Regulatory Servs.,*              19
907 S.W.2d 81 (Tex. App.--Dallas 1995, no writ)

*Golden Eagle Archery, Inc. v. Jackson,*                                   16
116 S.W.3d 757 (Tex. 2003)

*Holick v. Smith,*                                                         14, 15
685 S.W.2d 18 (Tex. 1985)

*Holley v. Adams,*                                                         *passim*
544 S.W.2d 367 (Tex. 1976)

*In re A.V.,*                                                              13
113 S.W.3d 355 (Tex. 2003)

*In re C.H.,*                                                              *passim*
89 S.W.3d 17 (Tex. 2002)

*In re D.E.S.,*                                                            13, 17
135 S.W.3d 326 (Tex. App.—Houston [14[th] Dist.] 2004, no pet.)

*In re E.A.G.,*                                                            19
373 S.W.3d 129 (Tex. App.--San Antonio 2012, pet. denied)

*In re E.N.C.*,
384 S.W.3d 796 (Tex. 2012) — 15

*In re G.M.*,
596 S.W.2d 846 (Tex. 1980) — 14

I*n re J.F.C.*,
96 S.W.3d 256 (Tex. 2002) — 14

*In re K.C.M.,*
4 S.W.3d 392 (Tex. App.--Houston [1st Dist.] 1999, pet. denied) — 21

*In re S.R L.,*
243 S.W.3d 232 (Tex. App.--Houston [14th Dist.] 2007, no pet.) — 21

*Lewelling v. Lewelling,*
796 S.W.2d 164 (Tex. 1990) — 21

*Richardson v. Green,*
677 S.W.2d 497 (Tex. 1984) — 15

*Stafford v. State,*
813 S.W.2d 503 (Tex. Crim. App. 1991) — 18

*Yonko v. Dept. of Family & Protective Servs.,*
196 S.W.3d 236 (Tex. App. - Houston [1st Dist.] 2006, no pet.) — 21

## **Texas Family Code**

Tex. Family Code Ann. § 101.007 — 15

Tex. Family Code Ann. § 161.001(1) — *passim*

Tex. Family Code Ann. § 161.001(2) — *passim*

Tex. Family Code Ann. § 161.206(a) — 14

**NO. 14-14-01003-CV**

_____

**IN THE COURT OF APPEALS
FOR THE FOURTEENTH JUDICIAL DISTRICT
OF TEXAS AT HOUSTON**

_____

*IN THE INTEREST OF D.T., Jr., A CHILD*

_____

**A.G.,** *Appellant*

**v.**

**TEXAS DEPARTMENT OF FAMILY AND
PROTECTIVE SERVICES,** *Appellee*

_____

**APPEALED FROM THE 315TH
DISTRICT COURT OF HARRIS COUNTY, TEXAS**

**Trial Cause No. 2010-00284J-A**

_____

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

This *Anders Brief* is submitted in this appeal. Appellant has appealed the termination of her parental rights to her child D.T. The father of the child has not appealed.

## STATEMENT OF THE CASE

This is a termination of parental rights case that was tried to the court. Appellant mother appealed the trial court's termination of her parental rights under sections 161.001(1)(N),(O) and section 161.001(2). Appellant now submits an *Anders Brief.*

## ISSUE PRESENTED

**Whether there are any non-frivolous grounds to assert on appeal.**

## STATEMENT OF FACTS

The Texas Department of Family and Protective Services ("TDFPS") received a referral on August 21, 2009 alleging physical neglect, and neglectful supervision of D.T., Jr. The child was three months old at the time (DOB 6/21/09). There was also a neglectful supervision referral as to another child (A.G. DOB 07/09/04) who is not a subject of this appeal. The referral alleged that D.T., Jr. was admitted to Lyndon B. Johnson Hospital on August 21, 2009, for dehydration due to vomiting and diarrhea. This was the second time he had been hospitalized since his birth. 4 RR Exhibit 7, pg. 2 (Removal Affidavit).

The referral also stated that prior to D.T., Jr.'s birth, A.G. had lived in Louisiana where she was involved in a relationship with D.T., Sr. that involved domestic violence. It also stated that A.G. left D.T., Sr. when she was pregnant but had plans to go back to

him.  D.T., Sr. was alleged to have struck A.G. in the jaw and face and there was a criminal action pending against him, as well as a CPS action.  4 RR Exhibit, pg. 2.

On October 28, 2009, D.T., Jr. was admitted a third time to Lyndon B. Johnson Hospital for vomiting and diarrhea, and a urinary tract infection.  It was reported that A.G. did not have formula on the day of her child's admission to the hospital.  The physician was allegedly concerned that the child had not been fed regularly because he was suffering from failure to thrive.  The child was discharged after three days in the hospital.  The removal affidavit states that Appellant agreed at that time to have the child placed with a family friend.  The placement allegedly broke down and the affiant stated that Appellant told her that she planned to leave Texas and return to Louisiana to be with D.T., Sr.  According to the Department, relative placements were not available, or otherwise inappropriate, and a Notice of Removal was served on Appellant on January 11, 2010.  4 RR Exhibit 7, pg. 3.

The Removal Affidavit stated that there was a prior removal history involving Appellant for physical neglect of the child, A.G. and disposition was reason to believe.  A.G. had been diagnosed with failure to thrive due to malnutrition.  She was nine months old and weighed only 13.4 pounds at the time she was brought to the hospital.  4 RR Exhibit 7, pp. 3-4.

The Department was given temporary managing conservatorship of D.T., Jr. on January 20, 2010.  4 RR 9.  The caseworker who testified at trial was the caseworker from

10

the time the case began. 3 RR 11. A Family Service Plan was ordered by the Court, and according to the caseworker, she gave Appellant a copy of the Plan. Appellant's signature was not on the Plan that was admitted into evidence at trial. 3 RR 9-12, 24-26. *See also* 4 RR Exhibit 12 (*Family Service Plan*). The caseworker testified that she explained the Family Service Plan to the mother. 3 RR 12. She also testified that Appellant knew how to reach her by telephone. 3 RR 13.

The Family Service Plan directed Appellant to obtain and maintain stable housing, and to participate with third-party contractors provided by the Department. She was to be taught basic skills like cooking and cleaning. She was asked to maintain stable employment and to complete therapy. 3 RR 10. Appellant was to complete services through MHMRA. 3 RR 26. Although there was testimony that Appellant suffered from limited functioning, the testimony also presented was that she was capable of completing the tasks enumerated in the Family Service Plan. 3 RR 11, 24.

At trial, the caseworker testified that the foster caregiver was meeting all of D.T., Jr.'s needs the caregiver could at the time. 3 RR 6. D.T., Jr. had been diagnosed with autism and psychosis and was receiving therapy in the foster home. 3 RR 7. He also had behavioral and emotional issues. 3 RR 38. The child had been evaluated by MHMRA but because of his age, there was not much that could be done at the time. 3 RR 7. Several family members were evaluated for a placement but they were rejected, or declined to take the child. Some of these individuals had criminal history and/or a history

of domestic violence in the home, and another did not have running water in the home. 3 RR 7-9, 38.

The evidence presented was that Appellant did not have restricted visitation but that Appellant had not visited with the child, or requested visitation, or otherwise contacted the agency since June of 2013. The Department was alleged to have never denied her access. The testimony was also that Appellant made it to court appearances. 3 RR 12-14, 42. The caseworker also testified that she had not sent letters, or birthday or Christmas presents, or the like. 3 RR 14. The caseworker also claimed that Appellant never called her to ask her to pass a message along from Appellant, nor did she ask about the child. 3 RR 14-15.

The Department also presented evidence that A.G. had not shown that she could provide a safe or stable environment. The caseworker testified that Appellant moved frequently and lived with others in order to have shelter, and did not have contact with D.T., Jr. 3 RR 15-17. The Department had custody of D.T., Jr. for more than six months. 3 RR 16-17. Appellant did not complete any services, and failed to comply with the provisions of a court ordered service plan. 3 RR 10, 17, 26-27.

The Department testified that D.T., Jr. was five years old and termination was in his best interest. Termination would give D.T., Jr., a chance to be adopted. 3 RR 18. The caseworker has worked with the Department for six years and she has seen children with special needs like D.T., Jr. be adopted. The Department would be able to start

12

aggressively seeking to find someone to adopt him once a termination order was signed. 3 RR 22-23, 39.

## SUMMARY OF ARGUMENT

Appellant's parental rights were terminated under Texas Family Code sections 161.001(1)(N) (constructive abandonment) and (O) (failure to comply with court order) and section 161.001(2) (best interest). TEX. FAM. CODE § 161.001(1)(N)(O), (2). After thoroughly reviewing the appellate record, the undersigned court-appointed counsel has determined, in her professional opinion, that there are no non-frivolous grounds to assert on appeal. *Anders v. California,* 386 U.S. 738 (1967). The procedure to be followed in an *Anders Brief* case are applicable to parental termination appeals. *In Re D.E.S.,* 135 S.W.3d 326 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

The undersigned counsel has reviewed the record several times to examine whether it supports a determination that there is legally and factually sufficient evidence to support the trial court's grounds for termination and best interest under subsections (N) and (O) of section 161.001(1), and 161.001(2) (best interest). Only one ground plus best interest is necessary in order for an appellate court to affirm. *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003).

Examining the record, it is apparent that the State meet its burden to show that Appellant constructively abandoned her child who had been in the permanent or temporary managing conservatorship of the Department for not less than six months.

13

The State also showed that Appellant failed to comply with the provisions of a court order that specifically established the actions she needed to take in order to obtain the return of her child who had been in the temporary managing conservatorship of the Department for not less than nine months as a result of the child's removal. The State also met its burden to show that termination of her relationship with her child was in her child's best interest. TEX. FAM. CODE § 161.001(1)(N)(O), (2). Accordingly, Counsel files this *Anders Brief* and a *Motion to Withdraw* because there are no non-frivolous grounds for appeal.

## *ARGUMENT AND AUTHORITIES*

### I.       Standard of Review in Parental Termination Cases

This is an appeal from a court trial in a parental termination case. The involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). The relationship that exists between a parent and their child is to be constitutionally guarded. *Santosky v. Kramer*, 455 U.S. 745, 758-759 (1982). Accordingly, courts must ensure that due process is afforded by requiring that these cases be proved by the standard of clear and convincing evidence. *In re J.F.C.*, 96 S.W.3d at 265-266; *In re G.M.,* 596 S.W.2d 846, 847 (Tex. 1980). *See also* TEX. FAM. CODE § 161.206(a). Clear and convincing evidence is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE

§101.007.

The burden to prove a statutory termination ground and best interest is the State's. The burden is not to be shifted to the parent. *See In re G.M.,* 596 S.W.2d at 847. Appellate courts must strictly scrutinize parental termination cases, and the statutes and case law that apply to them are to be strictly construed in favor of the parent. *Holick v. Smith*, 685 S.W.2d at 20-21. There is a strong presumption that the best interest of the child involves protection of the child's relationship with their parent. *In re G.M.*, 596 S.W.2d at 847.

In parental termination cases, the Texas Family Code requires the State to prove one or more of the grounds under section 161.001(1). It must also prove that termination is in the child's best interest. TEX. FAM. CODE § 161.001(1), (2); *Richardson v. Green,* 677 S.W.2d 497, 499 (Tex. 1984). Both a termination ground, and best interest, must be proven by clear and convincing evidence. *Holley v. Adams,* 544 S.W.2d 367, 379 (Tex. 1976).

II.    **Standard of Review on Appeal**

In conducting a legal sufficiency review, an appellate court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re E.N.C.,* 384 S.W.3d 796, 801 (Tex. 2012). To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing

court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. The appellate court must disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* This does not mean that a court must disregard all evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. If after conducting its review, the court determines that a reasonable factfinder could not form a firm belief or conviction that the allegations were true, then it must conclude that the evidence is legally insufficient. *In re J.F.C.*, 96 S.W.3d at 266.

A factual sufficiency review involves a different analysis. The appellate court must consider all the evidence equally, both disputed and undisputed, in order to determine if the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not have reasonably formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

An appellate court must give deference to a court's fact findings and should not supplant the court's judgment with its own. *In re C.H.,* 89 S.W.3d at 27; *Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 761 (Tex. 2003). The appellate court should inquire "whether the evidence is such that a factfinder could reasonably form a firm belief

or conviction about the truth of the allegations." *In re C.H.,* 89 S.W.3d at 25. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.,* 96 S.W.3d at 266.

In applying this standard, "[a]n appellate court's review must not be so rigorous that the only fact findings that could withstand review are those established beyond a reasonable doubt." *In re C.H.,* 89 S.W.3d at 26 (quoting *Santosky v. Kramer,* 455 U.S. at 767-69).

## III.   *Anders* Procedures

If after a thorough review of the record, court-appointed counsel determines that it is her professional opinion that urging points on appeal would be frivolous, and that an appeal would be without merit, counsel is required under the law and the rules of ethics to file an *Anders Brief* that meets the standards of *Anders v. California. See Anders v. California,* 386 U.S. 738. This Court has applied *Anders* procedures in parental termination cases as well as criminal cases. *See In Re D.E.S.,* 135 S.W.3d 326. The appellate court is then required to examine the record and determine if there are any non-frivolous points for appeal. If the Court determines that an appeal would be wholly frivolous, it may issue an opinion saying that it has examined the record and found no reversible error. An appellate court can also remand the case so that the trial court can appoint new counsel

17

to brief issues. *Bledsoe v. State,* 178 S.W.3d 824, 826-827 (Tex. Crim. App. 2005). A copy of the *Anders Brief,* and a copy of the appellate record, must be provided to the appellant. The appellant must also be told that they have a right to review the record. *Stafford v. State,* 813 S.W.2d 503, 510 (Tex. Crim. App. 1991). Counsel on appeal must advocate for their client and argue any non-frivolous points on appeal. *Anders v. California,* 386 U.S. at 744.

## IV. The evidence for the termination grounds and best interest was established by clear and convincing evidence.

### A. The State Met Its Burden Under Texas Law

Appellant's parental rights were terminated under Texas Family Code sections 161.001(1)(N) and (O), and the best interest section. The State meet its burden to show under (N) grounds that Appellant constructively abandoned her child who had been in the permanent or temporary managing conservatorship of the Department for not less than six months. The State also met its burden under (O) grounds to show that Appellant failed to comply with the provisions of a court order that specifically established the actions she needed to take in order to obtain the return of her child who had been in the temporary managing conservatorship of the Department for not less than nine months as a result of the child's removal. TEX. FAM. CODE § 161.001(1)(N), (O). The State meet its burden to prove both grounds and best interest by clear and convincing evidence.

18

As it relates to the constructive abandonment grounds, the Department was given temporary managing conservatorship of D.T., Jr. on January 20, 2010. 4 RR 9. The caseworker who testified, was the caseworker from the time the case began. 3 RR 11. She testified that Appellant did not have contact with D.T., Jr. and that the Department had custody of D.T., Jr. for more than six months. 3 RR 15-17. Appellant did not have restricted visitation but Appellant had not visited with the child, or requested visitation, or otherwise contacted the agency since June of 2013. The Department testified they had never denied her access. Appellant did make it to court appearances. 3 RR 12-14, 42. Appellant also did not send letters, or birthday or Christmas presents to D.T., Jr. 3 RR 14. Appellant never called the caseworker to ask her to pass a message along from Appellant, and she also did not ask about the child. 3 RR 14-15. The State met its burden to show constructive abandonment.

As it relates to the failure to comply with the provisions of a court order, a Family Service Plan was ordered by the Court and the caseworker said she gave Appellant a copy of the Plan. However, Appellant's signature was not on the Plan that was admitted into evidence at trial. 3 RR 9-12, 24-26. *See also* 4 RR Exhibit 12 (*Family Service Plan*). The caseworker testified that she explained the Family Service Plan to the mother. 3 RR 12. She also testified that Appellant knew how to reach her by telephone. 3 RR 13.

The Family Service Plan directed Appellant to obtain and maintain stable housing, and to participate with third-party contractors provided by the Department. She was to

19

be taught basic skills like cooking and cleaning. She was asked to maintain stable employment and to complete therapy. 3 RR 10. Appellant was to complete services through MHMRA. 3 RR 26. Although there was testimony that Appellant suffered from limited functioning, the testimony presented was that she was capable of completing the tasks enumerated in the Family Service Plan. 3 RR 11, 24.

The Department showed that A.G. had not presented it with any proof that she could provide a safe or stable environment. Appellant moved frequently and lived with others in order to have shelter. Yet, the caseworker had to admit that, as of the time of trial, no one had been to Appellant's new residence. This was even though Appellant's grandmother had notified the caseworker of this fact the month before. 3 RR 29-30. Appellant did not complete any services, and failed to comply with the provisions of a court ordered service plan. 3 RR 10, 17, 26-27. The State met its burden to prove under (O) grounds.

### B. Termination of the Parent-Child Relationship was in D.T., Jr.'s Best Interest

In addition to establishing that a parent's rights to their child should be terminated under one of the statutory termination grounds found in section 161.001(1), the State also has the burden of proving by clear and convincing evidence that termination of Appellant's parental rights is in the child's best interest. *See* TEX. FAM. CODE §161.001(2). There is a strong presumption that the child's best interest is served by maintaining the

parent-child relationship.  *In re K.C.M.*, 4 S.W.3d 392, 393-95 (Tex. App.--Houston [1st Dist.] 1999, pet. denied).  This presumption is set out in Texas Family Code section 153.131(b) and is a public policy that is unquestioned and deeply-rooted in Texas law. *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex. 1990).

The burden to show by clear and convincing evidence that termination is in the child's best interest must be shown apart from the statutory termination grounds in section 161.001(1).  A determination of best interest must be established and is to be analyzed on its own.  Termination of a parent's parental rights must not stand if termination is not in the child's best interest.  *In re S.R.L.*, 243 S.W.3d 232, 235 (Tex. App.--Houston [14th Dist.] 2007, no pet.).  Moreover, there is a very strong presumption under Texas law that the parent-child relationship should be maintained.  *Yonko v. the Dept. of Family & Protective Servs.*, 196 S.W.3d 236 (Tex. App.--Houston [1st Dist.] 2006, no pet.).

A determination of whether termination would be in the best interest of a child is done by looking at the factors set out in the seminal case of *Holley v. Adams.  See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).  The Texas Supreme Court set out nine non-exclusive factors to use in determining the best interest of the child.  Those factors are:

1) the desires of the child;
2) the emotional and physical needs of the child now and in the future;
3) the emotional and physical danger to the child now and in the future;

4) the parental abilities of the individuals seeking custody;

5) the programs available to assist those individuals to promote the best interests of the child;

6) the plans for the child by the parties seeking custody;

7) the stability of the home or proposed placement;

8) the acts or omissions committed by the parent that might indicate that the existing parent-child relationship is not a proper one; and

9) any excuses for the acts or omission committed by the parent.

*Id.*

These *Holley* factors are to be balanced and the exclusion of one or more, or the existence of some other factor, can be part of the analysis. The list is not exhaustive and is just a guide for the factfinder. The absence of evidence pertaining to some of the factors will not preclude a factfinder from forming a strong conviction or belief that termination is in the child's best interest; however, scant evidence relevant to each *Holly* factor will not support such a finding. *In re C.H.,* 89 S.W.3d at 27. An appellate court cannot rely on a lack of evidence to contradict a finding as if it were supporting the finding. A lack of evidence does not constitute clear and convincing evidence. *In re E.N.C.,* 384 S.W.3d at 796.

Child Protective Services received a referral after Appellant took D.T., Jr. to the County Hospital. The child was suffering from failure to thrive because of malnutrition. The referral stated that D.T., Jr.'s father had committed domestic violence against Appellant but that Appellant wanted to go back to him. 4 RR Exhibit 7, pg. 2.

22

Two months later, Appellant took the child to the hospital when he was suffering from vomiting, diarrhea, and a urinary tract infection. Appellant told hospital personnel that she did not have any formula. The physician was concerned that the child had not been fed regularly because he was again suffering from failure to thrive. 4 RR Exhibit 7, pg. 3. The caseworker testified that relative placements were not available, or otherwise inappropriate. 4 RR Exhibit 7, pg. 3.

The Removal Affidavit stated that there was a prior removal history involving Appellant for physical neglect of her child, A.G. Disposition was reason to believe. A.G. had been diagnosed with failure to thrive due to malnutrition. She was nine months old and weighed only 13.4 pounds at the time she was brought to the hospital. 4 RR Exhibit 7, pp. 3-4.

At trial, the caseworker testified that the foster caregiver was meeting all of D.T., Jr.'s needs the caregiver could at the time. 3 RR 6. D.T., Jr. had been diagnosed with autism and psychosis and was receiving therapy in the foster home. 3 RR 7. He also had behavioral and emotional issues. 3 RR 38.

The Department testified that D.T., Jr. was five years old and termination was in his best interest. Termination would give D.T., Jr., a chance to be adopted. 3 RR 18. The caseworker has worked with the Department for six years and she has seen children with special needs like D.T., Jr. be adopted. The Department would be able to start aggressively seeking to find someone to adopt him once a termination order was signed.

3 RR 22-23, 39. She testified to this fact even though, as of the time of trial, the Department had been broadcasting that D.T., Jr. was available for adoption for two years but that no one had expressed interest. 3 RR 32-33, 38. The Department only kept the broadcast open "maybe three to six days" according to the caseworker's testimony. 3 RR 45.

After thoroughly examining the record numerous times, Counsel is of the professional opinion that termination of Appellant's parental rights is in D.T., Jr.'s best interest. Counsel has found no non-frivolous grounds for appeal and the trial court's judgment is in the child's best interest.

## CONCLUSION AND PRAYER

Based on the undersigned Counsel's evaluation of the record before this Honorable Court on appeal, Counsel has concluded that in her professional opinion there are no arguable grounds of appeal and that an appeal would be wholly frivolous. It would be unethical for Counsel to assert any appellate points. Counsel certifies that she has forwarded a copy of this brief to Appellant at her last known address by certified mail, return receipt requested, along with a letter informing Appellant that she has a right to file a *pro se* response with this Court within 30 days. Counsel also informed Appellant that if this Court concludes that an appeal would be wholly frivolous, she can challenge that holding by filing a *Petition for Review* at the Texas Supreme Court. Accordingly, Counsel asks this Court to allow her to withdraw as Appellant's counsel.

Respectfully Submitted,

/s/ Lana Shadwick

_____

LANA SHADWICK
TBN: 00784951
2211 Norfolk, Ste. 920
Houston, Texas 77098
PHONE: 713-392-8222
Lana@LanaShadwick.com

**ATTORNEY FOR A.G., APPELLANT**

## ***CERTIFICATE OF COMPLIANCE***

I certify that the foregoing computer generated brief complies with word limit requirements of TRAP 9.4 (3) and the word count as calculated under the TRAP Rules is under 4198 words.

/s/ Lana Shadwick

_____

LANA SHADWICK

25

## *CERTIFICATE OF SERVICE*

I certify that a true and correct copy of appellant's amended brief was served in accordance with the Texas Rules of Appellate Procedure on March 7, 2015 on Sandra D. Hachem and Anna Stool (Guardian Ad Litem for A.G., Appellant) by electronic delivery, and to A.G., Appellant, by certified mail, R.R.R.

/s/ Lana S. Shadwick

_____

LANA SHADWICK